FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 27 2014

CENTRAL DISTRICT OF CALIFORNIA
BY Shy           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVEN P. HAWLEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

    Defendant.[1]

Case No. EDCV 13-00769 AN

MEMORANDUM AND ORDER

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising three disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends the Administrative Law Judge ("ALJ") failed to give proper consideration to the opinion of Walter Jones III, M.D. (JS 8-13.) In August 2011, Dr. Jones completed a one-page San Bernardino County Transitional Assistance Department report in which he assessed Plaintiff's level of incapacity by checking off boxes and

---

[1] The Acting Commissioner is substituted as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

making brief notations. (AR 315.) Dr. Jones noted a diagnosis of "ASHD" (arteriorsclerotic heart disease) and "CHF" (congestive heart failure), and reported that an EKG had been ordered. (AR 315.) Dr. Jones opined that Plaintiff had an "exertion" limitation, and was limited to "sitting work non exertion." (AR 315.) Dr. Jones checked boxes on the form indicating that Plaintiff's incapacity was permanent and that no additional tests or studies were needed to determine the degree and permanence of the incapacity. (AR 315.)

The ALJ properly rejected Dr. Jones's opinion because it was brief, conclusory, and unsupported by any objective, clinical findings. (AR 32); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ need not accept a physician's opinion that is brief, conclusory and inadequately supported by clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving "minimal evidentiary weight" to controverted treating source opinions that were "in the form of a checklist," and lacked supportive objective medical findings). Dr. Jones failed to reference any objective evidence or clinical findings to support his opinion that Plaintiff should be limited to non-exertional work in a seated position. (AR 315.) In fact, other than this one-page report, the record contains no treatment notes or other reports from Dr. Jones. Thus, the ALJ's decision to reject Dr. Jones's opinion is supported by substantial evidence.

The ALJ also properly found that the objective medical evidence conflicts with the extreme functional limitations assessed by Dr. Jones. (AR 32, 315); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (where a physician's opinion lacks the support of objective medical findings or rationale to support the opinion, the ALJ is entitled to reject that opinion). In making this determination, the ALJ accorded "great weight" to the testifying medical expert, Samuel Landau, M.D., a specialist in cardiovascular disease and internal medicine. (AR 31-32, 312-13, 322-28.) Dr. Landau testified that Plaintiff has medically determinable impairments of ischemic heart disease, morbid obesity, history of obstructive sleep apnea, probable venous insufficiency with

edema of the lower extremities, and possible early liver cirrhosis. (AR 31, 323.) In March 2011, Plaintiff was hospitalized for two days due to complaints of chest pain. (AR 239-40, 243-44.) Plaintiff's records showed that Plaintiff had been noncompliant with medication since 2010. (AR 241, 243, 247, 248.) Myocardial infarction was ruled out, and Plaintiff's symptoms were relieved with medication. (AR 244, 241, 244, 248, 253, 325.) Although some of Plaintiff's diagnostic studies and test results showed mild abnormalities (i.e., mild concentric left ventricular hypertrophy, enlarged left heart with arterial calcification and coronary stents, areas of mild pleural thickening with calcification, pulmonary congestion, subsegmental atelectasis in the right lower lung, and an enlarged liver), echocardiograms showed no acute ischemic changes, a CT scan was negative for pulmonary embolism, a Persantine nuclear stress test and a pharmacologic stress test showed normal ventricular ejection fraction and no reversible ischemia, a Doppler ultrasound of Plaintiff's lower extremities was negative for deep vein thrombosis, and Plaintiff's cardiac enzymes were within normal limits. (AR 244, 247, 253, 277, 279, 281, 282, 286, 306-11.) Dr. Landau testified that the borderline enlargement of Plaintiff's heart in the left-ventricular end did not necessarily effect the functioning of Plaintiff's heart and was not out of the ordinary for a person with Plaintiff's history of heart problems. (AR 31, 326-257.) Dr. Landau also testified that the enlargement of Plaintiff's left atrium was consistent with Plaintiff's history of hypertension, but was not significant. (AR 326-27.) Based on the objective medical evidence, Dr. Landau opined that Plaintiff is capable of standing and walking 2 hours in an 8-hour day, sitting without restriction if given a break every 2 hours, lifting and carrying 10 pounds frequently and 20 pounds occasionally, stooping and bending occasionally, and climbing stairs, but is precluded from climbing ladders, working at heights, balancing, squatting, kneeling, crawling, running, jumping, working around unprotected machinery, performing work involving the safety of others, and operating heavy equipment, motorized vehicles or foot pedals and controls. (AR 324.) Dr. Landau's opinion, which is consistent with the independent medical evidence, constitutes

substantial evidence to support the ALJ's rejection of Dr. Jones's opinion. *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *Tonapetyan*, 242 F.3d at 1149. The ALJ's resolution of the conflicting medical opinions is supported by substantial evidence.

Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issue #1.

### Issue #2

Plaintiff contends that the ALJ erred in concluding that he was capable of performing a significant number of jobs in the national economy, including work as a small products assembler II (Dictionary of Occupational Titles ("DOT") 739.687-030), cashier II (DOT 211.462-010), and bench assembler (DOT 706.684-042). (JS 17-19; AR 33-34.) Plaintiff asserts that because these jobs are designated as light work, the requirements of these jobs are incompatible with his residual functional capacity ("RFC"),[2] which limits him to standing and walking 2 hours in an 8-hour workday, and precludes him from operating foot pedals and controls. (JS 17-19.)

The DOT provides that a job should be rated as light work: "(1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls . . . ." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991); *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 83-10 ("Even though the weight lifted in a particular light job may be very little, a job is in this category when it

---

[2] The ALJ assessed Plaintiff with an RFC for a range of light work consistent with Dr. Landau's assessment. (AR 26, 324.) Specifically, the ALJ found as follows: "the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks; he is unlimited with respect to sitting with normal breaks, such as every two hours; he can occasionally stoop and bend; he can climb stairs, but he cannot climb ladders, work at heights, or balance; he cannot squat, kneel, crawl, run, jump, or operate foot pedals or controls; he cannot operate heavy equipment or motorized vehicles, work around unprotected machinery, or work where safety of others would be compromised." (AR 26.)

requires a good deal of walking or standing - the primary difference between sedentary and most light jobs."). Plaintiff claims that neither the ALJ nor the vocational expert ("VE") addressed the apparent conflict between the VE's testimony and the DOT's definition of light work. (JS 17-19); *see Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[I]n order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."); *see also Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (explaining that an ALJ must "first determine whether a conflict exists" between the DOT and the VE's testimony, and "then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."); *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (where the vocational expert's testimony differs from the DOT, he must provide a persuasive rationale supported by the evidence to justify the departure).

The ALJ acknowledged that Plaintiff's limitations, including the standing, walking, and foot pedal and control restrictions, did not allow Plaintiff to perform the full range of light work. (AR 26, 340); *see* 20 C.F.R. §§ 404.1567(b) ("[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of [the light work] activities"), 416.967(b) (same). At the administrative hearing, the ALJ asked the VE to assume a person similar to Plaintiff with respect to age, education, past work experience, and RFC. (AR 340.) The VE testified that an individual with the limitations described would be unable to perform Plaintiff's past work as a painter, but would be able to perform alternative work as a small products assembler II, cashier II, and bench assembler. (AR 340-41.) The VE explained that these jobs are classified in the DOT as unskilled work, with a light exertional level, and that there would be an eighty percent erosion of the occupational bases for the small products assembler II and bench assembler jobs, and a seventy-five percent erosion of the occupational base for the cashier II job. (AR 340-41.) The VE stated that her testimony was consistent with the DOT. (AR 341.) When Plaintiff's counsel asked about the

erosion of jobs, the VE explained that she was able to determine the number of available jobs based on her prior experience and similar assessments made by other experts. (AR 342.)

The VE considered Plaintiff's limitations on light work and properly reduced the number of jobs available. (AR 340-41); *see* SSR 83-12 (recognizing usefulness of vocational expert assistance where claimant's exertional RFC does not coincide precisely with the definition of any one exertional range). Contrary to Plaintiff's argument, the VE did not base her opinion on a hypothetical individual who was capable of performing the full range of light work. (AR 340-41.) While the VE did not state that the erosion of jobs was specifically due to Plaintiff's standing, walking, and foot pedals/controls limitations, such a conclusion is reasonably implied given the DOT's definition of light work. DOT, Appendix C - Components of the Definition Trailer; *see Light*, 119 F.3d at 793 ("[e]vidence sufficient to permit . . . a deviation [between the VE's testimony and the DOT] may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony") (citations omitted); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence). The VE's acknowledgment of the DOT's strength rating of light for the jobs cited, in conjunction with her opinion that there was a seventy-five to eighty percent erosion of available jobs, provided a sufficient rationale to support a deviation from the DOT. As such, the ALJ did not err by relying on the VE's testimony concerning Plaintiff's ability to perform other work.

Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issue #2.

### Issue #3

Plaintiff alleges he has been unable to work since March 2011, due to heart failure. (AR 27, 37, 44, 151.) Plaintiff reports a variety of symptoms, including chest pain, shortness of breath, dizziness, swelling of his feet and legs, and difficulty with standing, walking, sitting, lifting, carrying, squatting, bending, kneeling, climbing ladders and

getting up. (AR 27, 162, 167, 170, 329 330, 336.) The ALJ found that Plaintiff exaggerated his symptoms and was not a fully credible witness. (AR 28-30.) Plaintiff asserts that the ALJ improperly rejected his subjective symptom testimony. (JS 19-21.)

The ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. (AR 28-30); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ must give "specific, clear and convincing reasons" for rejecting the claimant's subjective symptom testimony when there is no evidence of malingering) (citation and internal quotation marks omitted)). The ALJ found that Plaintiff made conflicting statements regarding when and why he stopped working as a painter. (AR 29.) In particular, Plaintiff stated in his disability report that he had last worked on December 1, 2010, because he "was laid off due to no work." (AR 29.) Plaintiff's earnings records and his statement to a treating source are consistent with a December 2010 work cessation date. (AR 29, 142, 237.) At the administrative hearing, however, Plaintiff testified that he had to stop working in March 2011, due to a heart attack. (AR 29, 320.) Plaintiff stated that his employer had told him that he was no longer qualified to do work as a painter because he could not climb ladders or work at heights. (AR 328.) The ALJ properly relied on the inconsistency in Plaintiff's statements to discount Plaintiff's credibility. *See Tonapetyan*, 242 F.3d at 1148 (ALJ may use "ordinary techniques of credibility evaluation" including considering inconsistent statements and inconsistencies between the record and her statements); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ also found that the objective medical findings did not support Plaintiff's allegations of disability. (AR 29-30.) As discussed above, Plaintiff's treatment records showed that Plaintiff did not have a heart attack in March 2011, and testing and diagnostic studies revealed no significant abnormalities. (AR 29, 253, 326-27.) Dr. Landau's testimony and opinion regarding Plaintiff's work capacity further undermined Plaintiff's reported limitations. (AR 31, 322-28.) While a lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting allegations of

pain, it can be one of several factors used in evaluating the credibility of subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (lack of objective medical evidence supporting descriptions of pain and limitations negatively affected the claimant's credibility regarding the inability to work); *Batson*, 359 F.3d at 1196-97.

Other reasons cited by the ALJ provided further justification for the adverse credibility determination. For example, the ALJ noted that Plaintiff had a long history of medical noncompliance. (AR 29, 241, 243, 247, 256); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that non-compliance with prescribed treatment is proper evidence relating to the credibility of the claimant); SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show the individual is not following the treatment as prescribed and there are no good reasons for this failure.") The ALJ also took into account evidence that medication helped alleviate Plaintiff's pain and symptoms. (AR 28, 171, 241, 247); *see Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (factors ALJ may consider in assessing credibility include, inter alia, effectiveness or adverse side effects of pain medication). Further, the ALJ found that Plaintiff failed to seek regular treatment for his condition after his March 2011 hospitalization. (AR at 30); *see Smolen*, 80 F.3d at 1284; *Fair*, 885 F.2d at 603 (failure to assert good reason for not seeking treatment can cast doubt on sincerity of a claimant's subjective symptom testimony). Other than Dr. Jones's conclusory, one-page report discussed above, the record contains only one post-hospitalization treatment record. (AR 237.) That record, dated March 30, 2011, indicates Plaintiff was advised to undergo a sleep study and begin following the prescribed medication regimen. (AR 237.) There are no medical records showing that Plaintiff complied with these recommendations or ever sought continued treatment for his impairments. In sum, the ALJ offered specific, clear and convincing reasons to discount Plaintiff's testimony regarding the extent of his pain and limitations.

Accordingly, reversal or remand is not warranted on the basis of Issue #3.

## ORDER

The Court finds that the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: March 27, 2014

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE